MILLS (MAIN v.). See Case No. 8,974.

MILLS v. The MARY E. PEREW. See Case No. 9,207.

---

## Case No. 9,613.

### MILLS et al. v. The NATHANIEL HOLMES.

[1 Bond, 352.] 1

District Court, S. D. Ohio. April Term, 1860.

COLLISION — LYING AT WHARF — PRESUMPTION — ORDINARY CARE—PROPER SKILL AND CARE— PROXIMATE CAUSE OF INJURY.

1. Where damage is done by a boat in motion to one lying at a wharf, the presumption is against the moving boat, and to avoid liability it must appear that the greatest caution and vigilance were observed.

[Cited in The Scotia, 10 Fed. 687.]

2. Ordinary care under such circumstances will not protect the boat which commits the injury from responsibility.

3. No inference of negligence can be deduced from the fact that a steamboat lying at a wharf has a loaded barge alongside of her.

4. It is a paramount law of navigation that collisions are always to be avoided when it is practicable to do so, and the fact that one boat is in fault, will not justify another in the infliction of an injury that could have been avoided by the observance of proper skill and care.

5. In determining the question of fault with the view to the ascertainment of liability for an injury, the proximate cause of the injury must be regarded.

[Cited in Pope v. Seckworth, 47 Fed. 832.]

[This was a libel by James W. Mills and others against the steamboat Nathaniel Holmes, for damages sustained in a collision alleged to have been due to the negligence of the respondents.]

Lincoln, Smith & Warnock, for libellants.

E. Mills, for respondents.

OPINION OF THE COURT. This suit is prosecuted by the libellants, the owners of the steamboat Cuba, against the owners of the steamboat Nathaniel Holmes, to recover damages for a collision, caused as alleged by the sole fault of those having charge of the Holmes. It is not the usual case of an injury produced by colliding boats in motion, in which truth is often buried deep in a mass of conflicting evidence, and in which it is a hopeless task to ascertain where the fault lies. There is, in fact, very little difficulty in coming to a conclusion upon the evidence, and the main duty of the court is to determine the legal liability of the respondents upon the state of facts as proved. In this aspect of the case, it will not be necessary to notice specially the allegations of the parties in their pleadings, or to attempt an analysis of the great mass of depositions which have been submitted by the parties.

The material facts involved in the case, and which it may be assumed are substantially proved by the evidence, are that about nine o'clock in the evening of December 4, 1856, the Cuba, a stern-wheel boat, then one of a line of packets running between Louisville and Nashville, in an upward trip, reached the landing at Smithland, on the Ohio river, a short distance below the mouth of the Cumberland, and was lying at the wharf-boat, its bow being on a line with the upper end of the wharf-boat, in the act of receiving freight for Nashville and other points on the Cumberland. A barge laden with coal, belonging to the owners of the Cuba, was lashed to the outer or larboard side of the steamer and in close proximity to it. The wharf-boat was two hundred and thirty-seven feet in length, and the Cuba with its wheel about one hundred and seventy feet, thus leaving an unoccupied space at the lower portion of the wharf-boat, including a gangway, of about sixty-seven feet. The Cumberland river was at a high stage and there was sufficient depth of water along the whole line of the larboard side of the wharf-boat to enable a steamer of the largest size to land without danger of getting aground. It was a clear starlight night, the wind blowing somewhat fresh, but not with such violence as to render navigation difficult or dangerous. There were lights on the wharf-boat, and also the usual lights on the Cuba. The steamer Holmes in passing up the Ohio between ten and twelve o'clock in the night mentioned, had occasion to land at Smithland for the purpose of putting out some passengers. The object of the pilot or master was to bring the Holmes in contact with the barge lying alongside of the Cuba, and thus enable the passengers to get ashore. In this attempt the bow of the Holmes first struck the barge, but was carried out into the stream by the action of the current or some other cause and swung round, and the boat was again brought "head on" against the barge. The passengers were landed and the Holmes proceeded immediately up the river.

It appears very satisfactorily from the testimony, that some pieces of timber or scantling, which had formed a part of the frame work of a flat-boat some five or six feet in length, had been carried by the current and were lodged under the larboard guard of the Cuba and at a right angle with it, and were thus lying between the steamer and the barge. By the force of the blow of the Holmes in striking the barge, the ends of these timbers or scantling, which were some four or five inches square, were driven with such force against the hull of the Cuba that they penetrated the planks, which were two and a half inches in thickness, thereby making three separate holes or openings between the knuckle keelson and the binding streaks and the upright ribs or timbers of the hull of the boat. Through these openings the water entered freely and with great force.

1 [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

The proof establishes the fact, that all reasonable efforts were made by the officers and crew of the Cuba to stop the inflow of the water, but in this they were unsuccessful. And the boat, having broken the lines by which it was made fast to the shore, floated from the wharf, and sunk in deep water some distance below. The cargo of the Cuba, it seems, was nearly all transferred to the barge before the boat sunk, and what remained in the boat was reclaimed without material injury. There is, therefore, no claim in this action for damages in the loss of cargo. The boat was raised some time after the collision at an expense of $2,800, and was subsequently sold for $3,630, leaving to the owners, after deducting incidental expenses, the sum of $534. They claim as damages the value of the boat at the time of the injury, subject to the deduction of the net proceeds of sale. The answer of the respondents denies that there was any fault or negligence in landing the Holmes, and affirms that they were in no way responsible for the injury sustained by the Cuba. The outline of the case, thus briefly presented, is sufficient to indicate the only points for the decision of the court. That a serious injury has been sustained by the libellants there can be no doubt; and the inquiry is whether the law applied to the facts will give redress for such injury.

The Cuba, at the time this injury was inflicted in the prosecution of its lawful business, was lying in its proper place at the Smithland wharf. And the decisions are numerous to the effect, that where damage is done by a boat in motion to one thus at rest, the presumption of wrong is against the moving boat; and to avoid liability it must appear that the greatest caution and vigilance was observed. Ordinary care under such circumstances will not protect the boat which commits the injury from responsibility. This principle is well illustrated in the case of Culbertson v. Shaw, 18 How. [59 U. S.] 385. The action was brought to recover the value of a flat-boat and its cargo lost by a steamer coming in collision with it. The flat-boat was moored at the shore in a proper place when the injury was inflicted. The supreme court held, that the steamer was liable for the damage. Judge McLean, who delivered the opinion of the court, says: "When a steamer is about to enter a harbor, great caution is required. There being no usage as to an open way, the vigilance is thrown upon the entering vessel. Ordinary care under such circumstances will not excuse a steamer for a wrong done. A vessel tied to the shore is helpless. No movement can be made by it to avoid an entering boat; therefore the whole responsibility rests on such boat." In the case of Vantine v. The Lake [Case No. 16,878], Judge Grier held, "that a vessel which moves alongside of another at a wharf or elsewhere, becomes responsible to the other for all injuries re-

sulting from her proximity, which human skill or precaution could have guarded against."

Judge Parsons, in his treatise on Maritime Law, recently published, says: "If a ship at anchor and one in motion come into collision, the presumption is that it is the fault of the ship in motion, unless the anchored vessel was where she should not have been. The rule of law would seem to be the same where a vessel aground is run into." 1 Pars. Mar. Law, 201. And in the case of The Lochlibo, 3 W. Rob. Adm. 310, Dr. Lushington says: "As the Lochlibo ran into a vessel (at anchor), which was incapable of helping herself, it is her duty to prove, in order to exonerate her from blame, that the collision arose from circumstances which it was utterly out of her power to prevent, or that it was the fault of the pilot on board, or that it arose from the default of those on board the Aberfoyle." There are numerous other cases and authorities in support of the doctrine stated, which it is unnecessary specially to notice. I pass, therefore, to the inquiry, whether the present case falls within the operation of this principle; in other words, was every possible precaution used by those in charge of the respondents' boat to avoid a collision.

That the Holmes was in fault, under the circumstances of the case, in attempting a landing against the barge of the Cuba, seems to admit of no doubt. As before stated, there was an unoccupied space of sixty-seven feet in the lower part of the wharf-boat, within which a landing could have been effected by the Holmes without the danger of coming in collision with the Cuba or the barge attached to it. There is some evidence to the effect that it was proper and according to the usages of navigation for the Holmes to land at the barge for the purpose of discharging passengers, but the weight of the evidence is, that it was not only practicable, but safer to have landed on the wharf-boat. There was ample room for this purpose, and there is not the remotest probability that any injury would have resulted if this course had been pursued. That it was practicable, as well as safe, is proved by the fact that the steamer Winnifrede came up immediately after the Holmes, and made a landing on the wharf-boat without difficulty and without injury. But the Holmes was guilty of a still more inexcusable fault in not observing due care and caution in the manner in which the landing was effected. On this point, much testimony has been taken by the parties, and there is some apparent conflict in their statements. The witnesses for the libellants state strongly and without hesitation, that the Holmes in landing struck the barge with unusual force. A large proportion of these witnesses were either passengers on the Cuba, or employed on the wharf-boat, having no connection with the Cuba, and with the most favorable oppor-

tunity of knowing the character of the landing made by the Holmes. There is no ground for the supposition that these witnesses were under any mistake as to the facts to which they have testified, or that they have not stated those facts with fairness and candor. Nor does it follow, as a necessary inference, that the witnesses for the respondents who state that the landing of the Holmes was not with unusual force have corruptly falsified the facts. They were on the moving boat at the time, and the shock of the collision would not be so sensibly felt by them as by those who were on the boat which received the blow. But apart from the evidence of the witnesses referred to, as to the landing of the Holmes, there are other facts showing conclusively the great force with which that boat struck the barge of the Cuba. It is in evidence that the lower end of one of the fenders on the Cuba was broken off by the force of the blow, and, moreover, that several of the stanchions of the Holmes were shattered. But more conclusive still is the fact before referred to, that the timbers or scantlings were driven through the planks of the Cuba. No supposition is reconcilable with this result, than that the Holmes came against the Cuba's barge with very unusual force. Nor can the conclusion be avoided, that there was a want of caution and vigilance in making the landing, that throws upon the Holmes the responsibility resulting from the collision.

An attempt has been made by the respondents to prove negligence or want of due caution on the part of the Cuba, to protect them from liability. But the evidence fails entirely to sustain this point. It is insisted that the Cuba was in fault in having a loaded barge alongside at the Smithland wharf. The proof, however, does not show that this was a violation of any of the usages of navigation; nor can the court see anything in the fact from which any inference of negligence can be deduced. The respondents also insist that the libellants' boat was not provided with a sufficient number of fenders for protection against collision, and other accidents of that character. The proof is not clear that the Cuba had more than three fenders on the larboard side, at the time of the collision, but in this connection it is proved that fenders are not regarded as necessary on boats navigating the Cumberland river. This, however, can not be viewed as material in this case, as fenders are used for the protection of the guards of the boat, and are of no avail for the protection of that part of the hull of a steamer in which the injury in question was sustained. Equally unavailing is the defense set up, that the Cuba was deficient in strength to meet the perils of the navigation in which it was employed. The evidence, however, is, that the boat had been thoroughly overhauled and repaired a

few weeks only before the collision, and was then as staunch and sound as boats of the same class usually are in that trade.

But the defenses indicated, if fully sustained by the facts, are not available to the respondents in this action. It is a paramount law of navigation, that collisions are always to be avoided when it is practicable to do so; and the fact that one boat is in fault will not justify another in the infliction of an injury that could have been avoided by the observance of proper skill and care. The Cuba was entitled to protection from a wrongful act on the part of the Holmes, even if fault or negligence could be imputed to the former. If it be conceded that the barge was improperly at the side of the Cuba, or that there was a deficiency of fenders, or that the boat was weak and frail in its structure, no one or all of these facts would afford a justification for the wrong-doing of the Holmes. The law is well settled that in determining the question of fault with a view to the ascertainment of liability for an injury, the proximate cause of the injury must be regarded. And, in this case, if that proximate cause is found in the improper attempt of the Holmes to land at the Cuba's barge, instead of the wharf-boat, or the inexcusable violence with which it was landed agains the barge, the respondents are not shielded from liability by proof of negligence or fault on the part of the other boat which had no connection with the act which produced the injury. The law on this subject is well stated by the supreme court of Vermont in the case of Trow v. Central R. Co., 24 Vt. 487, in these words: "Therefore, if there be negligence on the part of the plaintiff, yet, if at the time when the injury was committed, it might have been avoided by the defendant in the exercise of reasonable care and prudence, an action will lie for the injury." There are many other cases which sustain this view of the law, to which I will merely refer, without specially noticing them. 27 Mo. 95; 4 Ohio St. 476; 3 Ohio St. 195.

Upon the whole, I can see nothing in the facts or the law of this case to shield the respondents from liability for the injury sustained by the libellants in the loss of their boat. There was certainly great fault, if not positive recklessness in the landing made by the Holmes, which was the immediate cause of the injury. And it is equally clear, that no negligence is attributable to the Cuba, which can justify the misconduct of the other boat, or which calls for a division of the damages on the ground of mutual fault. The weight of the testimony on that point shows the value of the Cuba to have been $10,000. The net proceeds of the sale of the boat being deducted from this sum, a decree will be entered for the balance, with interest at six per cent. from December 4, 1856.